IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **SHIMA NIROOMAND,** *Plaintiff*, v. **UNITED STATES DEPARTMENT OF HOMELAND SECURITY,** *et al.*, *Defendants*. | Civil No.: 1:24-cv-02103-JRR |

### MEMORANDUM OPINION

Pending before the court is Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 5; the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, the Motion, construed as a motion to dismiss, will be granted.

**I.    BACKGROUND**[1]

Plaintiff Shima Niroomand, a U.S. citizen, brings the instant mandamus action regarding her spouse's, Nima Niroomand, visa application. (ECF No. 1; the "Complaint.") Plaintiff names as Defendants the United States Department of Homeland Security ("DHS"), United States Citizenship and Immigration Services ("USCIS"), United States Department of State ("State Department"), Embassy of the United States in Ankara, Turkey, Alejandro Mayorkas as Secretary of DHS, Ur Jaddou as Director of USCIS, Antony J. Blinken as Secretary of State, and Philip Kosnett as Charge de Affaires of the United States at the U.S. Embassy in Ankara, Turkey.[2]

---

[1] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Complaint. (ECF No. 1.) *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

[2] The individual public officer Defendants have since changed. Pursuant to Federal Rule of Civil Procedure 25(d), Madam Clerk shall substitute Kristi Noem for Alejandro Mayorkas, Angelica Alfonso-Royals for Ur Jaddou, Marco Rubio for Antony J. Blinken, and Thomas J. Barrack for Philip Kosnett.

Mr. Niroomand is an Iranian citizen residing in Turkey. *Id.* ¶¶ 14, 16, 21. Plaintiff and her spouse are both of the Baha'i faith; Mr. Niroomand fled Iran due to harassment on the basis of said faith on February 6, 2015, seeking asylum in Turkey. *Id.* ¶ 21. Plaintiff and her spouse were married in Turkey on December 16, 2020. *Id.* ¶ 17. They have a minor child born on May 15, 2021. *Id.* ¶ 17. On January 25, 2021, Plaintiff filed an I-130 petition (the "I-130 Petition") for Mr. Niroomand with USCIS. *Id.* ¶ 18. USCIS approved the petition on July 1, 2021, and forwarded the approved petition to the State Department's National Visa Center for processing. *Id.* ¶ 19. Mr. Niroomand then filed an application for immigrant visa and alien registration with the State Department and paid the requisite fees. *Id.* ¶ 20.

Mr. Niroomand completed his consular interview in October 2023. (ECF No. 1 ¶ 22.) That same day, the consular officer refused Mr. Niroomand's visa application under the Immigration and Nationality Act ("INA"), § 221(g) (8 U.S.C. § 1201(g)), determining him to be "ineligible for the visa sought and that additional security screening might produce information that could help the applicant to establish eligibility."[3] (ECF No. 5-2 ¶ 9.) The consular officer subsequently conducted a reinterview with requests for additional documents. *Id.* ¶ 10. At the conclusion of the second interview, Mr. Niroomand's visa application remained refused under the INA § 221(g). *Id.* ¶ 11. On December 12, 2023, the U.S. Embassy in Ankara requested Mr. Niroomand submit an additional form with supplemental questions for visa applicants, which it received on or before December 18, 2023. *Id.* ¶¶ 12–13. While Mr. Niroomand's visa application remains refused, additional security screening is ongoing. *Id.* ¶ 14.

In her Complaint, Plaintiff references DHS's "Controlled Application Review and Resolution Program" ("CARRP"). She alleges that, according to CARRP, DHS "intentionally

---

[3] As discussed *infra*, the court considers certain facts proffered in the Kelly Declaration that bear on the court's exercise of jurisdiction.

delays applications of adherents to Islam due to security concerns." (ECF No. 1 ¶ 8.) Plaintiff contends CARRP is an "internal policy that has neither been approved by Congress" nor "subjected to public notice and comment" that requires DHS "to investigate and adjudicate applications deemed to present potential 'national security concerns'" and to prohibit "USCIS field officers from approving an application with a potential 'national security concern,' [and] directing officers to deny the application or delay adjudication—often indefinitely—in violation of the INA." *Id.* ¶ 32. Plaintiff alleges: "[o]n information and belief, . . . Defendants are intentionally delaying a response to the DOS in regard to [Mr. Niroomand's] visa application pursuant to [CARRP] . . . due to [Mr. Niroomand] being from a predominantly Muslim country." *Id.* ¶ 30. Further, according to Plaintiff, the State Department "is and has been complicit in the delay in processing [Mr. Niroomand's] visa application." *Id.* ¶ 31.

Plaintiff initiated this action on July 22, 2024, asserting two claims for relief: "Agency Action Unlawfully Withheld and Unreasonably Delayed" under the Administrative Procedure Act (Count I), and "Violation of Right to Due Process of Law" (Count II). (ECF No. 1 ¶¶ 24–45.) Plaintiff seeks relief including, relevant here, that this court "issue a writ of mandamus compelling Defendants to promptly complete all administrative processing within thirty days." *Id.* at p. 12. Defendants subsequently moved to dismiss. (ECF No. 5.)

## II. <u>LEGAL STANDARD</u>

### A. Federal Rule of Civil Procedure 12(b)(1)

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction." *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). "The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F. Supp. 3d 162, 176 (D.

Md. 2019) (citing *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999)). "In determining whether jurisdiction exists, 'the court may look beyond the pleadings and the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue.'" *Id.* at 176 (quoting *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003)).

Subject matter jurisdiction challenges may proceed in two ways: "either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" *Mayor & City Council of Baltimore v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *see Ministry of Defence of State of Kuwait v. Naffa*, 105 F.4th 154, 159 (4th Cir. 2024) (same). Conversely, in a factual challenge, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. "In that circumstance, the court 'may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Trump*, 416 F. Supp. 3d at 479 (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)).

In support of their jurisdictional challenge, Defendants attach the declaration of Claire Kelly, Attorney Advisor in the Office of Assistant Legal Adviser for Consular Affairs with the State Department. (ECF No. 5-2; the "Kelly Declaration.") Plaintiff similarly offers evidence in opposition to Defendants' argument. The court will consider the Kelly Declaration, and Plaintiff's responsive exhibits, to the extent it bears on Defendants' jurisdictional challenges. Notably,

4

Plaintiff neither disputes nor challenges the pertinent facts attested to in the Kelly declaration—instead seemingly agreeing that such facts (less Defendants' legal conclusions related thereto) are accurate.

### B. Federal Rule of Procedure 12(d)

In their Motion, Defendants seek dismissal of Plaintiff's Complaint for failure to state a claim or, in the alternative, summary judgment. "A motion with this caption implicates the court's discretion under Fed. R. Civ. P. 12(d)." *Snyder v. Md. Dep't of Transp.*, No. CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022). Federal Rule of Civil Procedure 12(d) provides: "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). "Pursuant to Rule 12(d), the Court has discretion to determine whether to accept evidence outside the pleadings, and thus convert a Rule 12(b)(6) motion to a Rule 56 motion." *Coleman v. Calvert Cnty.*, No. GJH-15-920, 2016 WL 5335477, at *3 (D. Md. Sept. 22, 2016) (citations omitted).

"There are two requirements for a proper Rule 12(d) conversion." *Greater Balt. Ctr. for Pregnancy Concerns. Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). "First, all parties must 'be given some indication by the court that it is treating the Rule 12(b)(6) motion as a motion for summary judgment,' which can be satisfied when a party is aware 'material outside the pleadings is before the court.'" *Snyder v. Maryland Dep't of Transportation*, No. CV CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022) (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)). Second, customarily, the parties must first "be afforded a reasonable opportunity for discovery." *Gay*, 761 F.2d at 177.

5

Because the court concludes that dismissal of Plaintiff's Complaint pursuant to Rule 12(b)(6) is warranted without consideration of matters outside the pleading (excepting matters considered related to Defendants' jurisdictional challenge), the court need not reach Defendants' alternative argument for summary judgment. The court therefore construes the motion as one for dismissal pursuant to Rule 12(b)(6) (in addition to Rule 12(b)(1)).

### C. Federal Rule of Civil Procedure 12(b)(6)

A motion asserted under Federal Rule of Civil Procedure 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of [her] claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp.

6

3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

### III. ANALYSIS

Before reaching Defendants' challenges and Plaintiff's response thereto, the court first addresses overarching legal principles related to the visa application process at issue. Under the INA, a noncitizen married to a U.S. citizen may petition for an immigrant visa. *Lovo v. Miller*, 107 F.4th 199, 202 (4th Cir. 2024) (citing 8 U.S.C. §§ 1151(b)(2)(A)(i), 1153(a)(2)); *see Kerry v. Din*, 576 U.S. 86, 89 (2015) (explaining that statute "creates a special visa-application process for aliens sponsored by immediate relatives in the United States" (citation omitted)).

"Typically, that process requires that a noncitizen first be the beneficiary of an approved immigrant petition, such as a Form I-130." *Lovo*, 107 F.4th at 202 (citation omitted). The citizen-relative files a Form I-130 petition with USCIS on behalf of the noncitizen to have him "classified as an immediate relative." *Din*, 576 U.S. at 89; 8 C.F.R. § 204.1(a)(1), (b). If USCIS approves the petition for a noncitizen outside the United States, it sends it on to the State Department's National Visa Center. 8 C.F.R. § 204.2(a)(3). The noncitizen may then "apply for a visa by submitting the required documents and appearing at a United States Embassy or consulate for an interview with a consular officer." *Din*, 576 U.S. at 89 (citing 8 U.S.C. §§ 1201(a)(1), 1202); *Nusrat v. Blinken*, No. CV 21-2801 (TJK), 2022 WL 4103860, at *1 (D.D.C. Sept. 8, 2022). *See Begum v. United States Dep't of State*, No. 1:22-CV-00478-JMC, 2022 WL 16575703, at *1 (D. Md. Oct. 31, 2022) (same).

"All nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202 (d). Specifically,

> When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa.

22 C.F.R. § 42.81(a); *see Ghadami v. United States Dep't of Homeland Sec.*, No. CV 19-00397 (ABJ), 2020 WL 1308376, at *1 (D.D.C. Mar. 19, 2020) (same). At all times, the burden of proof is upon a person making an application for a visa "to establish that he is eligible to receive such visa . . . , or is not inadmissible under any provision of this chapter." 8 U.S.C. § 1361.

### A. Jurisdictional Challenge – Unreasonable Delay

Defendants first argue that the court does not have jurisdiction to review Plaintiff's mandamus and APA claims based on unreasonable delay because she cannot identify "a clear, non-discretionary duty for the State Department or a consular officer" to readjudicate Mr. Niroomand's refused visa application. (ECF No. 5-1 at p. 8.) Plaintiff argues that her spouse has not received a final adjudication on his application because his case is presently in "Administrative Processing." (ECF No. 10 at pp. 1–2, 4–14.)

"[T]he APA does not permit judicial review of a challenge to 'agency action [that] is committed to agency discretion by law.'" *Lovo v. Miller*, 107 F.4th 199, 210 (4th Cir. 2024) (quoting 5 U.S.C. § 701(a)(2)). "Under § 706, we may only compel 'agency action' that has been 'unlawfully withheld or unreasonably delayed.'" *Gonzalez v. Cuccinelli*, 985 F.3d 357, 365 (4th Cir. 2021) (quoting 5 U.S.C. § 706(1)). A claim that an agency action is unreasonably delayed "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required* to take." *Lovo*, 107 F.4th at 210 (emphasis in original) (quoting *Norton v. S.*

8

*Utah Wilderness All.*, 542 U.S. 55, 64 (2004)). "But where an agency is *not required* to do something, [courts] cannot compel the agency to act—let alone to act faster." *Gonzalez*, 985 F.3d at 366 (emphasis in original).

"Similar to the APA, the Mandamus Act only permits federal courts to exercise jurisdiction if an agency has a clear duty to act." *Lovo*, 107 F.4th at 216. Indeed, "to show that it is entitled to mandamus relief, a plaintiff must show, among other things, that it has a 'clear and indisputable right to the relief sought' and that the responding party has a 'clear duty to do the specific act requested.'" *Cumberland Cnty. Hosp. Sys., Inc. v. Burwell*, 816 F.3d 48, 52 (4th Cir. 2016) (quoting *United States ex rel. Rahman v. Oncology Assocs., P.C.,* 198 F.3d 502, 511 (4th Cir. 1999)). "The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U. S. Dist. Ct. for N. Dist. of California*, 426 U.S. 394, 402 (1976) (citing cases).

In alleging a clear duty exists here, Plaintiff points to the APA, 5 U.S.C. § 555(b). Section 555(b) provides: "With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Plaintiff contends that because her spouse's visa application is still undergoing "administrative processing," Defendants' actions have been "unreasonably delayed" pursuant to 5 U.S.C. § 706(1). (ECF No. 1 ¶¶ 25–27; ECF No. 10 at pp. 1–2.) As discussed above, 8 U.S.C. § 1202(d) requires nonimmigrant visa applications "be reviewed and adjudicated by a consular officer." Further still, 22 C.F.R. § 42.81(a) provides that "[w]hen a visa application has been properly completed and executed," the consular officer must then "issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa."

The question before this court then is whether Plaintiff plausibly alleges that Defendants have a clear duty, pursuant to 5 U.S.C. § 555(b) to adjudicate Mr. Niroomand's visa application after his application was refused by the consular officer. While the applicable regulations and statutes at issue here may "create a duty to adjudicate a nonimmigrant visa application,"[4] *see* 8 U.S.C. § 1202 (d) and 22 C.F.R. § 42.81(a), many courts in this Circuit and others have concluded "that § 555(b) does not impose a duty on consular officers to review or readjudicate a visa application after refusing it." *Sakhi v. Blinken*, No. CV DLB-24-1376, 2025 WL 904141, at *6 (D. Md. Mar. 25, 2025); *see, e.g.*, *Turner v. Blinken*, No. CV RDB-24-318, 2024 WL 4957178, at *5 (D. Md. Dec. 3, 2024); *Ishaq v. Schofer*, No. TJS-24-207, 2024 WL 3729107, at *5 (D. Md. Aug. 8, 2024); *Aslam v. Heller*, No. 1:23CV971, 2024 WL 3535389, at *3–6 (M.D.N.C. July 23, 2024); *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *4 (D.C. Cir. July 24, 2024) (per curiam); *Ramizi v. Blinken*, 745 F. Supp. 3d 244, 261–62 (E.D.N.C. 2024), *appeal dismissed,* No. 24-2008, 2024 WL 5509498 (4th Cir. Dec. 9, 2024); *Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 102 (D.D.C. 2024). Indeed, courts have held that "refusal of a visa under § 221(g) fulfills immigration officials' discrete, non-discretionary duty regarding visa applications." *Turner v. Blinken*, No. CV RDB-24-318, 2024 WL 4957178, at *5 (D. Md. Dec. 3, 2024) (citing cases). The allegations and undisputed facts set forth in the accompanying declaration here show that the consular officer refused Mr. Niroomand's visa petition pursuant to § 221(g). (ECF No. 5-2 ¶ 9; ECF No. 10 at p. 3.) As this court and others have explained, that denial satisfies any nondiscretionary duty.

---

[4] The court does not reach the question whether there is a mandatory duty under the INA to adjudicate visa petitions. *See Aslam v. Heller*, No. 1:23CV971, 2024 WL 3535389, at *3 (M.D.N.C. July 23, 2024) (finding that the defendants had "a discrete, nondiscretionary duty to grant or to refuse visa applications" and citing cases); *Sakhi v. Blinken*, No. CV DLB-24-1376, 2025 WL 904141, at *4 (D. Md. Mar. 25, 2025) (recognizing that "[c]ourts are split on whether there is a mandatory duty, under the INA, to review and adjudicate" immigrant and nonimmigrant visa applications" (citation modified)). Here, there is no dispute that Mr. Niroomand's application was refused (with the dispute being whether that refusal was a final decision).

Plaintiff's implied assertion that Defendants' denial of Mr. Niroomand's application is not an adjudication of his application because his application remains in administrative processing is not persuasive. "Conspicuously absent from [an analogous regulation] is any requirement that the refusal be 'final' or ineligible for discretionary re-adjudication or 'administrative processing.'" *Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 101 (D.D.C. 2024). As the D.C. Circuit recently explained, a district court properly dismisses a plaintiff's claim where she asserts an entitlement to a final decision in the form of issuance or refusal of the application "without then also placing it in administrative processing." *Karimova*, 2024 WL 3517852, at *3 (noting also that the plaintiff failed to identify "any law 'plainly prescrib[ing]' that the consular officer not put an officially refused visa application in administrative processing") (quoting *Interstate Commerce Comm. v. New York, N.H. & H.R. Co.*, 287 U.S. 178, 204 (1932)).

Consistent with this, this court has previously dismissed claims raising the same challenges of administrative process where "Plaintiffs have cited no authority or regulations imposing an additional duty on Defendants to adjudicate [the visa application] that has been refused, or placed into administrative processing, under § 221(g)." *Turner v. Blinken*, No. CV RDB-24-318, 2024 WL 4957178, at *6 (D. Md. Dec. 3, 2024). The court is not persuaded to deviate from the caselaw cited above based on Plaintiff's reliance on a seemingly archived webpage from the State Department, especially because the argument presented is that a refusal "may change" based upon additional information—none of which addresses the relevant statute, regulation, and caselaw at issue here. (ECF No. 10 at pp. 2–3.) Plaintiff identifies no authority to support a finding that Defendants have a clear duty to review or readjudicate an application in administrative processing after a refusal. To be clear, Plaintiff's inferences drawn from the State Department's website are insufficient to indicate or suggest such a duty. (ECF No. 10 at pp. 2–3.)

While offered in response to Defendant's consular nonreviewability argument, the court briefly addresses Plaintiff's reliance on *Patel v. Reno*, 134 F.3d 929 (9th Cir. 1997), to support the argument that the consular officer's § 221(g) refusal does not constitute a final decision. In *Patel*, a U.S. citizen sought visas for his wife and daughters in India; however, due to suspicion that the citizen spouse "was naturalized under false preten[s]es," Immigration and Naturalization Service "urg[ed] . . . the consulate in Bombay, India has refused to act on the Patel family visa applications, even though Patel remains a naturalized citizen." *Id.* at 930. "Acting on this information, the consulate did not issue the visas. In fact, however, no denaturalization proceedings had begun against Patel." *Id.* at 931. The consulate informed the plaintiff that his application was "refused . . . until the denaturalization proceedings had been completed and Patel's eligibility to petition had been firmly established." *Id.* (citation modified). On the purported refusal, the Ninth Circuit concluded

> Most importantly, it is not a final decision. As respondents' counsel admitted during oral argument, the consulate is holding the visa applications in abeyance. Additionally, respondents' counsel stated that should the denaturalization procedures conclude favorably for Patel, the Patels would not have to fill out new visa applications; these ones would be reactivated. No provision for suspension of the visa applications or for a temporary refusal is provided in 22 C.F.R. § 42.81. "There are no exceptions to the rule that once a visa application has been properly completed and executed before a consular officer a visa must be either issued or refused." 10 Charles Gordon et al., Immigration Law & Procedure § 42.81 n.1 (1994). We therefore conclude that the consulate's letter is not a refusal within the meaning of 22 C.F.R. § 42.81.

*Id.* at 932 (footnote omitted).

Such circumstances are not present here; while the consulate may seek additional information, Mr. Niroomand received his refusal. There is no allegation that the consulate is holding the petition in abeyance and intentionally delaying adjudication of the petition on some

specific claim (with the possible exception of CARRP, which the court does not credit for the reasons set forth below).  To the contrary, the consulate has been consistent in its refusal of the application.  Moreover, as discussed above, more recent cases from this court and others opining on similar circumstances to those at issue here have concluded there is no nondiscretionary duty to review or readjudicate a visa application after a § 221(g) refusal.  The court is thus not persuaded that *Patel* supports Plaintiff's invocation of this court's jurisdiction here.

Accordingly, the court concludes that it lacks jurisdiction over Plaintiff's request for mandamus and related APA claim arising from unreasonable delay.[5]  To the extent Plaintiff's claims are based on same, they will be dismissed.

### B. Standing Challenge

Defendants further assert that Plaintiff lacks standing to pursue her APA claim arising from DHS's alleged use of CARRP because it is inapplicable to the I-130 Petition at issue.  (ECF No. 5-1 at pp. 24–26.)  Plaintiff offers no response to this argument, nor advances any argument in support of any CARRP-related APA claim, effectively conceding the point.  *See Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("In failing to respond to [defendant's] argument, Plaintiff concedes the point."); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (explaining that a plaintiff "abandon[s]" her claim where she failed to respond to argument).  In any event, the court agrees that Plaintiff has failed to demonstrate standing as to her CARRP-based APA claim.

---

[5] Because the court concludes it does not have jurisdiction to hear Plaintiff's claim of unreasonable delay under the APA and for mandamus related thereto, it does not reach Defendants' argument that Plaintiff has failed to state a claim as to same based on the consular nonreviewability doctrine and application of the *TRAC* factors, *see Telecommunications Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70 (D.C. Cir. 1984).  (ECF No. 5-1 at pp. 13–21.)  Of note, while Defendants claim that the doctrine of consular nonreviewability may strip federal courts of subject matter jurisdiction, that position appears unsupported by Supreme Court precedent.  *See Dep't of State v. Muñoz*, 602 U.S. 899, 908 n.4 (2024) (recognizing that the Court previously "explained that the doctrine of consular nonreviewability is not jurisdictional") (citing *Trump v. Hawaii*, 585 U.S. 667, 682–83 (2018)).

"Article III of the U.S. Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.' 'One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue.'" *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017) (quoting U.S. CONST. ART. III, § 2 and *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)). To establish standing, a party invoking federal jurisdiction must show: (1) "an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" (2) "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court," and (3) that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted); *see Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017) (same).

Plaintiff acknowledges that CARRP is a DHS, not State Department, policy. (ECF No. 1 ¶ 29.) Plaintiff seems to allege that the State Department is complicit in the delay of the I-130 Petition based upon application of CARRP. As multiple courts have acknowledged, however, "CARRP does not apply to a Form I-130" where DHS has already approved same. *Ali v. United States Dep't of State*, 676 F. Supp. 3d 460, 468 (E.D.N.C. 2023) (citing cases). Indeed, where DHS has approved the I-130 Petition, it has already "completed its role" in the visa process. *Id.* "If CARRP does not apply to Plaintiff's [spouse], and [she] has not been affected by it, then [she] has no standing to pursue a claim based on it." *Ahmed v. U.S. Dep't of Homeland Sec.*, No. 21-CV-893 (APM), 2022 WL 424967, at *3–4 (D.D.C. Feb. 11, 2022) (citation modified); *see Begum v. United States Dep't of State*, No. 1:22-CV-00478-JMC, 2022 WL 16575703, at *4–5 (D. Md. Oct. 31, 2022) (same) (citing cases).

14

In addition to the deficiencies above—that DHS, the entity responsible for CARRP, already completed its role in approving Mr. Niroomand's visa application—Plaintiff's speculative allegations that "on information and belief" she believes Defendants as a whole are "intentionally delaying response" based on CARRP do not save her claim. Such allegations are speculative, conclusory, and unsupported by any factual allegations. *See Ali*, 676 F. Supp. 3d at 468 (finding the allegation that "[o]n information and belief . . . [d]efendants are intentionally delaying a response . . . pursuant to the CARRP program" too speculative to establish standing); *Giliana v. Blinken*, 596 F. Supp. 3d 13, 23 (D.D.C. 2022) (finding that the allegation that "on information and belief, . . . the Defendants are intentionally delaying this immigration case because of CARRP," unsupported by factual allegations and "the mere presence of delay" was not "inherently suggestive of CARRP being applied," especially where USCIS has already approved the petition). *See also Begum*, 2022 WL 16575703, at *4 (finding that the plaintiff's allegation that the State Department "regularly works with DHS when carrying out background security investigations" insufficient to "overcome the fact that DHS's CARRP policy is inapplicable to a Form I-130").

Accordingly, the same speculative allegations are insufficient here to support standing—they fail to present an injury in fact casually connected to the conduct complained of that is likely to be redressed by a favorable decision of this court. *See Lujan*, 504 U.S. at 560, *supra*.

C. **Due Process Claim**

Defendants finally move to dismiss Plaintiff's due process claim, arguing that binding Supreme Court precedent "forecloses Plaintiff's argument." (ECF No. 5-1 at pp. 22–24.) The Due Process Clause of the Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. CONST. AMEND. V. In evaluating claims brought under this clause, courts must "first ask whether there exists a liberty or property interest

of which a person has been deprived." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).  Defendants point to the Supreme Court's decision in *Department of State v. Muñoz*, in which the Court recognized that a noncitizen has no constitutional right of entry to this country and held that a U.S. citizen relatedly "does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country."  602 U.S. 899, 908–09 (2024).

This court and others have similarly concluded that "'there is no property right in an immigrant visa,' . . . nor do noncitizens 'have a constitutionally-protected interest in the procedures by which . . . visas are obtained.'"  *Mahmood v. U.S. Dep't of Homeland Sec.*, No. CV 21-1262 (RC), 2021 WL 5998385, at *9 (D.D.C. Dec. 20, 2021) (quoting *Smirnov v. Clinton*, 806 F. Supp. 2d 1, 12 (D.D.C. 2011), *aff'd,* 487 F. App'x 582 (D.C. Cir. 2012)); *see Ishaq v. Schofer*, No. 8:24-CV-00207-TJS, 2024 WL 3729107, at *8 (D. Md. Aug. 8, 2024) (recognizing same); *Ali v. United States Dep't of State*, 676 F. Supp. 3d 460, 472 (E.D.N.C. 2023) (recognizing same).

Here, Plaintiff's Complaint fails to identify whether she is bringing a procedural or substantive due process claim.  Plaintiff does not respond to Defendants' argument seeking dismissal of her due process claim or otherwise offer any argument in support of same.  She does not offer how or why the above-referenced caselaw, including the Supreme Court's holding in *Muñoz*, does not foreclose (or bear on) her claim.  In view of the lack of clarity in Plaintiff's pleadings and her apparent abandonment of the claim, *see Stenlund*, 172 F. Supp. 3d at 887 and *Ferdinand-Davenport*, 742 F. Supp. 2d at 777, *supra*, the court concludes Plaintiff has failed to state a plausible claim as to Count II.

## IV. CONCLUSION

For the reasons set forth herein, by separate order, Defendant's Motion (ECF No. 5), construed as a motion to dismiss, will be granted.


Date: July 3, 2025                                                                    /S/

                                                                    _____
                                                                    Julie R. Rubin
                                                                    United States District Judge